IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

RICHARD ALLEN FARLEY,      )
                                 )
      **Plaintiff,**      )
                                 )
**v.**                             )          **CIVIL ACTION NO. 2:13-12048**
                                 )
**CAROLYN W. COLVIN,**      )
**Acting Commissioner of Social Security,**  )
                               )
      **Defendant.**      )

**M E M O R A N D U M   O P I N I O N**

       This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 11 and 12.), and Plaintiff's Supplemental Brief (Document No. 13.) and Defendant's Response. (Document No. 14.)  Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 7 and 8.)

       The Plaintiff, Richard Allen Farley, (hereinafter referred to as "Claimant"), filed an application for DIB on December 22, 2011 (protective filing date), alleging disability as of April 14, 2010, due to "hypothyroidsim, degenerative disc,  lumbar dessication, back injury, depression/PTSD, knee injuries, tinnitus (bilateral), bilateral plantar fasciitis, hiatal hernia, fatigue, hearing loss (bilateral), and colon polyps." (Tr. at 15, 83, 142-48, 167, 179.) The claim was denied initially and on reconsideration. (Tr. at 83-85, 89-91.) On May 30, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 92-93.) The hearing was held on

November 14, 2012, before the Honorable Charlie Paul Andrus. (Tr. at 28-58.) By decision dated November 27, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-27.) The ALJ's decision became the final decision of the Commissioner on March 20, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) On May 22, 2013, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

2

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since April 14, 2010, his alleged onset date. (Tr. at 17, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative joint disease, tinnitus, depression, and anxiety," which were severe impairments. (Tr. at 17, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for less than a full range of light work as follows:

> [T]he [C]laimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) He needs a sit/stand option at one-hour intervals; occasionally climb ladders; frequently climb stairs, stoop, balance, kneel, crouch, and crawl. He should avoid high temperatures and loud noise levels; avoid concentrated exposure to vibration, dust, gas, and fumes; eliminate work at heights and dangerous machinery. He is limited to simple, routine work; can concentrate; given normal breaks every two hours; and can relate to supervisors, co-workers, in a non-public work setting.

(Tr. at 19-20, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 25, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE")

taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a house sitter, order clerk, and night watch person, at the light level of exertion, and as a bench worker and inspector, at the sedentary level of exertion. (Tr. at 26-27, Finding No. 10.) On this basis, benefits were denied. (Tr. at 27, Finding No. 11.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on January 16, 1963, and was 49 years old at the time of the administrative hearing, November 14, 2012. (Tr. at 25, 32, 142.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 26, 33, 178, 180.) In the past, he worked

4

as a United States Navy boiler technician, combat crewmember, border control, outside pump sales person, specialty valve and controls sales person, paint sales person, and water filter sales person. (Tr. at 25, 52-53, 180-81.185-92)

 Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence in three respects. (Document No. 11 at 3-12.) First, he argues that the ALJ improperly assessed Claimant's credibility. (Id. at 7-10.) Citing Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987), Claimant argues that he satisfied the requirements of 42 U.S.C. § 423(d)(5)(A), and that the evidence of record is supported by substantial evidence. (Id. at 7-8.) He further argues that the ALJ utilized boilerplate credibility language which warrants remand "because such language provides no basis to determine what weight the [ALJ] gave the Plaintiff's testimony." (Id. at 9.) Finally, he argues that the ALJ failed to explain why no weight was given to the opinion of the Veterans Administration awarding him an 80% service-connected disability. (Id.)

In response, the ALJ sets forth the standard for evaluating pain and credibility pursuant to the Regulations and Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). (Document No. 12 at 12-13.) The Commissioner then asserts that contrary to Claimant's argument, the ALJ did not rely merely on boilerplate language. (Id. at 13.) Rather, the ALJ extensively recounted Claimant's subjective allegations and discussed how the medical evidence and Claimant's activities impacted the ALJ's overall credibility finding. (Id.) Although Claimant's subjective complaints were not fully credible, the Commissioner asserts that the ALJ gave them significant deference in assessing his RFC and limited him to performing only light work despite Claimant's testimony that he could perform medium work (Id. at 15.) The Commissioner asserts that the ALJ accounted for all of Claimant's

5

credible limitations and aptly relied on the VE's testimony that there was work in the national economy which Claimant could perform. (Id. at 16.)

Second, Claimant argues that the ALJ placed an inordinate weight on the fact that neither a treating nor consulting examiner provided a functional assessment regarding his physical or mental abilities, and therefore, failed to develop fully the evidence in the case knowing that Claimant was without the financial means to obtain health care from private sources. (Document No. 11 at 10.)

In response, the Commissioner notes that contrary to Claimant's argument, Elizabeth Bodkin, M.A., conducted an examination on behalf of the agency. (Document No. 12 at 17 n. 6.) Ms. Bodkin completed a mental status examination and clinical interview, but did not complete a separate medical source statement. (Id.) Nevertheless, she offered an opinion that Claimant's memory, social functioning, concentration, persistence, and pace were within normal limits. (Id.) The Commissioner asserts that contrary to Claimant's argument, the ALJ did not place an inordinate weight on the absence of any such functional assessments but simply noted the fact as part of his review of the opinion evidence pursuant to SSR 96-6p. (Id. at 17.) Pursuant to 20 C.F.R. § 404.1519a(b), the Commissioner asserts that the ALJ was not required to obtain any additional information because there was sufficient evidence of record for the ALJ to make a decision. (Id.) The Commissioner asserts that pursuant to 20 C.F.R. § 404.1512(a), it was Claimant's burden to provide additional evidence if he believed it was necessary. (Id.) The Commissioner contends that there is no merit to Claimant's argument that he was unable to obtain consultative evaluations due to his financial situation. (Id. at 18.)

Finally, Claimant argues that the Commissioner's decision is not supported by substantial evidence in light of Dr. Guberman's January 3, 2013, disability exam, and Mr. Reeser's January 14,

6

2013, psychological evaluation, which Claimant submitted to the Appeals Council for consideration. (Document No. 11 at 11-12.) Claimant contends that the reports reinforce his credibility and that of the VA and are in response to the ALJ's statement that the record was void of any functional assessments from treating or consulting sources. (Id. at 11.) Claimant notes that the Appeals Council summarily found that the new evidence was retrospective and returned it to Claimant for use in a new application. (Id.) Claimant contends that the reports warrant a finding of disability in the current case. (Id. at 12.)

In response, the Commissioner contends that the Appeals Council explained that it reviewed the newly submitted evidence and found that it was not material, which was a more than an adequate explanation. (Document No. 12 at 18.) Citing Meyer v. Astrue, 662 F.3d 700, 706 (4th Cir. 2011), the Commissioner asserts that the Appeals Council is not required to articulate its reasoning in denying a request for review of the ALJ's decision. (Id.) Nevertheless, the Commissioner asserts that the evidence is neither new nor material because there is no reasonable possibility that it would have changed the outcome of this case. (Id.) She asserts that Dr. Guberman's one-time examination is internally inconsistent and inconsistent with the other evidence of record. (Id.) Likewise, Mr. Reeser's opinion most likely would not have changed the ALJ's decision because he agreed with two of the psychologists from the VA that Claimant likely was exaggerating his symptoms of PTSD. (Id. at 19.) Furthermore, Mr. Reeser assessed a GAF of 55,[1] which was indicative of only moderate psychological symptoms. (Id.) Thus, these two opinions do not warrant remand. (Id.)

---

[1]    The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

In his Supplemental Brief, Claimant argues that his subsequent award of disability benefits, one day after the ALJ's decision, entitles him to a sentence six remand. (Document No. 13 at 1-2.) Citing Baker v. Commissioner of Soc. Sec., 520 Fed. App'x 228, 229 (4th Cir. 2013), however, Claimant acknowledges that an award of benefits on a subsequent application near the time of the ALJ's decision is not, by itself, new and material evidence. (Id. at 2.) Rather, Claimant must demonstrate that the underlying "new and material" evidence necessitating the remand pertains to the period under consideration in the instant appeal. (Id.) Claimant argues that the evaluations by Dr. Guberman and Mr. Reeser pertain to the period under consideration by the ALJ. (Id.) He asserts that Dr. Guberman found Claimant to have been disabled from the date he last worked, April 14, 2010, and Mr. Reeser stated that his mental functional limitations were present in 2011. (Id.) He therefore asserts that remand is required. (Id.) Claimant further asserts that subsequent to the ALJ's decision, the VA found him unemployable with an overall combined rating of 90%. (Id. at 3.) Citing Bird v. Astrue, 699 F.3d 337 (4th Cir. 2010), Claimant notes that the SSA is required to give significant weight to a VA finding of 100% disability. (Id.) Claimant argues that a 90% rating closely approaches the factual situation in Bird, and that the matter should be remanded for further consideration of the 90% rating. (Id.)

In response, the Commissioner asserts that Claimant fails to meet his burden of proving that the evidence relating to his subsequent award of benefits is relevant to the matter at hand. (Document No. 14 at 1.) Regarding Dr. Guberman's evaluation, the Commissioner notes that despite his opinion of disability since Claimant's alleged onset date of April 14, 2010, Claimant's subsequent award of benefits did not find him disabled until November 28, 2012.  (Id. at 2.) Furthermore, the Commissioner asserts that his examination was not material because it was

internally inconsistent and inconsistent with the other evidence of record, as well as Claimant's ability to have performed a medium exertion job at a golf course. (Id.) Regarding Mr. Reeser's evaluation, the Commissioner notes that Mr. Reeser agreed with the two VA psychologists that Claimant likely was exaggerating his symptoms of PTSD. (Id. at 3.) Furthermore, Mr. Reeser reported an essentially normal mental status exam and assessed a GAF of 55. (Id.) Thus, neither his nor Dr. Guberman's opinions of disability warrant a remand for further consideration. (Id.)

Regarding the VA decision, the Commissioner notes that the VA found Claimant to be entitled to individual unemployability as of January 14, 2013, with an assignment of 70% mental disability, because that is the date that private treatment records showed his condition worsened. (Id.) The Commissioner asserts that there is no indication that this decision relates to the relevant time period in the instant case, which ended on November 27, 2012. (Id.) The Commissioner asserts that this case is inapposite to the facts in Bird because the VA disability rating in Bird applied to the relevant time period, where as here, it does not. (Id. at 4.) The Commissioner notes that despite Claimant asserting a 90% disability rating, the VA decision indicates only an 80% combined disability, with the other 10% stemming from his bilateral plantar fasciitis with heel spurs. (Id. at 4-5.) Thus, Claimant has failed to demonstrate that the VA decision rating is relevant to the ALJ's decision, and therefore, does not warrant remand. (Id. at 5.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

***Physical Impairments***:

On May 4, 2010, x-rays of Claimant's right foot revealed focal asymmetric soft tissue

swelling with no acute bony abnormality. (Tr. at 250.) On May 12, 2010, Dr. A'Nedra Fulle Terry, D.P.M., examined Claimant for his painful right heel of six months. (Tr. at 295-97, 548-49.) Claimant reported that the pain was worse with running and with standing after rest. (Tr. at 296, 548.) Dr. Terry diagnosed left plantar fasciitis and heel spur. (Tr. at 297, 548.) He recommended that Claimant treat with ice, Ibuprofen, Medrol dose pack, stretching exercises, 1st step orthotics, and an injection to the right heel. (Id.)

On June 28, 2011, Stephanie L. Disney, an audiologist, conducted testing which revealed moderate sensorineural hearing loss in the left ear and mild sensorineural hearing loss in the right ear. (Tr. at 276-79.) She ordered new hearing aids for Claimant. (Tr. at 279.)

Dr. Michael Lupashunski, D.P.M., examined Claimant for his plantar Fasciitis with heel spur on July 13, 2011. (Tr. at 272.) He noted that Claimant had received multiple medications with little success, as well as over-the-counter insoles with some help. (Id.) He ordered Claimant some custom rigid devices from carbon fiber to support and stabilize his feet, which Claimant received on July 13, 2011. (Tr. at 268, 272.)

On September 1, 2011, Kristin D. Martin, an audiologist, reported that with Claimant's new hearing aids, he was able to repeat words and answer questions without visual assistance when speech was presented at normal conversational intensity. (Tr. at 468-69.) Claimant was pleased with the sound quality and physical fit of the new hearing aids and was motivated to use the new devices. (Tr. at 469.)

On October 25, 2011, Claimant was examined by Dr. Ramon S. Lansang, Jr., M.D., for complaints of right elbow pain. (Tr. at 457-58.) Claimant reported that he was employed as a golf pro and played golf, hitting the ball using the right arm. (Tr. at 457.) He was concerned that his part-

time livelihood depended on his ability to play golf. (Tr. at 459.) Dr. Lansang noted on exam that Claimant had focal tenderness at the lateral epicondyle, no warmth, and pain with wrist extension and gripping. (Tr. at 458.) Dr. Lansang ordered EMG/Nerve Conduction Studies of Claimant's right elbow which were consistent with a diagnosis of lateral epicondylitis, with tendinopathy, with evidence of superficial radial nerve syndrome with demelination and slowing. (Tr. at 264-65.) Dr. Lansang recommended that Claimant be treated conservatively, including physical therapy, for at least six months prior to considering surgical referrals. (Tr. at 266.)

On November 1, 2011, Dr. Lansang examined Claimant for his reports of pain of right lateral arm pain. (Tr. at 261.) He noted that Claimant's arm was about the same and prescribed physical therapy once a week for six weeks that consisted of therapeutic exercises, manual therapy, and pain modalities. (Tr. at 261-62.) He opined that Claimant's rehabilitation potential was good. (Tr. at 262.)

The x-rays of Claimant's right elbow on November 9, 2011, showed an olecranon spur and an ill-defined sclerotic focus in the proximal ulna. (Tr. at 249.) Dr. Richard B. Manis, M.D., an orthopedic surgeon, diagnosed lateral epicondylitis ("tennis elbow") and prescribed a TENS unit, a right elbow brace, and home exercises. (Tr. at 254-55.)

On November 22, 2011, x-rays of Claimant's lumbosacral spine revealed mild scoliosis and mild arthritic changes. (Tr. at 245.) The x-rays of his bilateral knees demonstrated mild arthritic changes. (Tr. at 246.) Chest x-rays revealed no active disease. (Tr. at 248.)

Claimant presented to the VA Clinic on January 13, 2012, with complaints of low back pain, post status a fall on January 8, 2012. (Tr. at 597-98.) Claimant reported having used Ibuprofen, ice, and heat, without relief. (Tr. at 597.) He described the pain as throbbing in nature that ranged from a level five to eight out of ten in intensity. (Id.) The x-rays of Claimant's lumbar spine on January

11

13, 2012, demonstrated multifocal hypertrophic spurring with no acute bony abnormality. (Tr. at 565.) The degree of degenerative change was somewhat pronounced for an individual of Claimant's age. (Id.)

On February 27, 2012, Narendra Parishak, M.D., a state agency physician, reviewed Claimant's medical records and completed a physical RFC assessment. (Tr. at 64-67.) Dr. Parishak opined that Claimant was capable of performing medium exertional level work, with frequent postural limitations and that required no concentrated exposure to extreme cold, noise, or vibration. (Tr. at 65-66.) Dr. Parishak's findings were based in part on Claimant's x-rays, mild scoliosis of the lumbar spine, mild degenerative disease of the knee, and his hearing test without significant abnormality. (Tr. at 66.)

### *Mental Impairments*:

On April 30, 2010, Mr. Vincent, a licensed social worker, conducted a mental health consult for Claimant's complaints that he had "a lot of issues" and that he did not "trust people very often." (Tr. at 293-94, 550-51.) Claimant discussed family and relationship issues. (Tr. at 293, 550.) Mental status exam essentially was normal except that Mr. Vincent noted Claimant was detached and had fair insight. (Tr. at 294, 551.) He diagnosed anxiety NOS, PTSD rule out, and assessed a GAF of 54. (Id.) Mr. Vincent recommended that Claimant see Dr. Kuchibhatla and visit the Vet Center. (Id.)

On May 13, 2011, Ms. Lewis, a licensed social worker, conducted a mental status exam for complaints of depression, anxiety, poor sleep, and PTSD. (Tr. at 282-85, 536-38.) Claimant reported depression after nine tours of military duty and separation from his family. (Tr. at 282, 537.) Ms. Lewis observed that Claimant was oriented fully, was cooperative and maintained good eye contact, had an appropriate affect, maintained spontaneous and normal speech, exhibited a linear thought

process, had intact memory, denied suicidal or homicidal ideation, and ambulated independently. (Id.) She diagnosed depression, insomnia, and assessed a GAF of 65.[2] (Tr. at 283, 537-38.) Ms. Lewis recommended continued individual counseling and that he continue taking the anti-depressants prescribed by his primary care provider. (Id.)

On May 26, 2011, Claimant saw Pamela J. Carte, a licensed independent clinical social worker, for a comprehensive mental health evaluation at the VA. (Tr. at 510-12, 522-27.) Claimant reported that he was laid off from his job at the golf course due to his physical problems and was enrolled currently in school to complete a degree in physical education. (Tr. at 523.) He hoped to pursue a career as a football coach. (Id.) Claimant reported that he used to enjoy yard work and regularly playing golf, but now spends most of his time alone preferring not to argue with his girlfriend. (Id.) Ms. Carte noted that Claimant's mental status exam essentially was normal with the exception of a mildly restricted affect and depressed mood. (Tr. at 526.) She diagnosed mood disorder due to a general medical condition and assessed a GAF of 62. (Id.) Ms. Carte recommended that he continue his medication management and individual therapy at the Vet Center. (Tr. at 527.)

Claimant saw James E. Overfelt, a nurse practitioner, on June 9 and 28, 2011, for medication management, at which times he assessed anxiety and insomnia. (Tr. at 476-79, 493-96.) On July 28, 2011, Claimant saw Mr. Overfelt for medication management and for anxiety and insomnia. (Tr. at 470-72.) Claimant reported that the medication was "strong stuff and it helps." (Tr. at 471.) He indicated that the Bupropion helped his mood and that the Hydroxyzine helped improve his sleep

---

[2] A GAF of 61-70 indicates that the person has "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, [and] has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

even though he used it only intermittently. (Id.) He reported that his stress was increased because he was discharging soon from the Navy. (Id.) Claimant reported increased irritability, insomnia, and hyper-vigilance. (Id.) Mental status exam essentially was normal and Mr. Overfelt diagnosed anxiety disorder NOS, insomnia, and assessed a GAF of 65. (Id.) He continued Claimant's medications. (Tr. at 472.)

On October 25, 2011, Sandra L. Skar, a psychiatrist, saw Claimant at the VA Telemental Health Clinic. (Tr. at 459-61.) Ms. Skar noted an essentially normal mental status exam and diagnosed anxiety disorder NOS, adjustment disorder, and assessed a GAF of 65. (Tr. at 461.) She continued Claimant's medications. (Id.)

Claimant saw Mr. Overfelt on November 28, 2011, for medication management. (Tr. at 354-57.) Claimant reported that he was not doing well and that his thyroid affected his mood, which he believed was caused by his increased tinnitus. (Tr. at 355.) He reported that he slept well with Vistaril. (Id.) Mr. Overfelt noted this Claimant's mental status exam essentially was normal. (Tr. at 355-56.) He diagnosed depression, anxiety, and assessed a GAF of 55. (Tr. at 356.)

On December 5, 2011, Mr. Overfelt saw Claimant for a medication management session. (Tr. at 327-30.) Mr. Overfelt reported that Claimant had a defensive and suspicious attitude, normal affect, irritated and congruent affect, impaired and true insight, good judgment, and normal thought processes and content. (Tr. at 329.) He diagnosed depression, anxiety, and assessed a GAF of 60. (Id.)

On January 5, 2012, Claimant presented to the VA for a medication management session with Mr. Overfelt. (Tr. at 302-08.) Claimant reported that Bupropion helped his anxiety, but he was unsure whether it helped his depression. (Tr. at 303.) Claimant was concerned that his thyroid level

14

was too low and was affecting his mood and activity level. (Id.) On mental status exam, Mr. Overfelt observed that Claimant was alert and oriented, ambulated with a steady gait, was cooperative and attentive, was interested and defensive, had a stable affect and congruent but dysphoric and anxious mood, had normal thought processes, exhibited impaired insight, poor judgment, and was suspicious. (Tr. at 304.) He diagnosed anxiety disorder, depressive disorder, and assessed a GAF of 60. (Id.)

Mr. Overfelt saw Claimant for medication management on February 8, 2012, at which time Claimant reported that Wellbutrin helped with irritability but did not help with depression. (Tr. at 580-82.) Mr. Overfelt noted that Claimant was focused on obtaining his benefits. (Id.) Claimant continued to work with the Vet Center for counseling, which helped. (Id.) Mental status exam was unremarkable and Mr. Overfelt diagnosed anxiety disorder and insomnia. (Tr. at 581-82.)

On February 28, 2012, Ms. Bodkin conducted a mental status examination at the request of the state agency. (Tr. at 560-64.) Claimant drove himself to the hearing, presented with a normal gait and posture, and ambulated without any assistive devices. (Tr. at 560.) He reported difficulty sleeping, a poor appetite, crying episodes, a dysphoric mood for two weeks, and symptoms of posttraumatic stress disorder ("PTSD"). (Tr. at 561.) He indicated that he had been going to the VAMC for the past two years and monthly for psychological treatment. (Id.)

Ms. Bodkin observed that Claimant had a good attitude and was cooperative, interacted appropriately, maintained normal eye contact, , had adequate verbal responses, spontaneously generated conversation, spoke relevantly and coherently, spoke with a normal tone and pace, was oriented fully, had a dysphoric mood and restricted affect, had no delusions or hallucinations, had fair insight, denied suicidal or homicidal ideation, and had normal judgment, memory, concentration, and psychomotor behavior. (Tr. at 562.) She diagnosed PTSD and major depressive disorder,

15

recurrent, moderate. (Id.) She opined that his social functioning, persistence, and pace were within normal limits and that he was capable of managing finances. (Tr. at 563.)

On March 15, 2012, Clifton R. Hudson, Ph.D.., a licensed psychologist, evaluated Claimant for PTSD. (Tr. at 566-78, 1036-49.) Dr. Hudson noted that there "were some clinical and psychometric indicators of over-reporting...that necessarily interfere with accurate diagnosis and assessment of functional impairment." (Tr. at 577, 1047.) Dr. Hudson noted that forensically, "it is possible that [Claimant] does have legitimate symptoms of anxiety and depression, and it is possible that he does not." (Tr. at 578, 1048.) He noted that it was difficult to make such a determination due to the fact that Claimant had over-reported his symptoms significantly. (Id.) Nevertheless, Dr. Hudson acknowledged that Claimant sought mental health treatment during military service for his combat stressor exposure, and therefore, he found that the record supported the presence of a mental disorder first diagnosed during military service "and as likely as not continuing to the present day." (Id.) Dr. Hudson opined that Claimant did not report the full criteria for PTSD, but reported continued anxiety and depression, which fell within the mild symptom range. (Id.) He further opined that Claimant was employable from a mental health perspective. (Id.)

On May 4, 2012, Claimant was admitted to the hospital and transferred from Huntington VAMC to Lexington VAMC due to suicidal ideation following his brother's death from a drug overdose and his son's arrest for drugs the night prior to his admission. (Tr. at 634-35.) Claimant received psychotropic medications, his mood improved and he denied suicidal ideation, and he was discharged home on May 10, 2012. (Id.)

On June 11, 2012, Claimant was admitted voluntarily for worsening depression and suicidal ideation following the death of his dog. (Tr. at 632-34.) Claimant was restarted on psychotropic

16

medications and was discharged home on June 15, 2012, with diagnoses of adjustment disorder and an assessed GAF of 65. (Tr. at 632.)

On August 14, 2012, Claimant expressed concerns about taking his medications, which were causing nightmares. (Tr. at 923-27.) Mr. Overfelt diagnosed anxiety disorder and assessed a GAF of 50.[3] (Tr. at 925-26.) He stressed the importance of continuing his medications and prescribed Prazosin for nightmares and Thorazine for sleep and anxiety. (Tr. at 926.) On August 22, 2012, Mr. Overfelt saw Claimant for a follow-up of his anxiety disorder. (Tr. at 914-18.) Claimant reported that he felt better and overall felt more positive, and that the medications helped him sleep. (Tr. at 915.) He was alert and oriented, had a restricted but stable affect, and a euthymic but mildly anxious mood. (Tr. at 916.) His mental status exam otherwise was unremarkable. (Id.) Mr. Overfelt diagnosed anxiety disorder and assessed a GAF of 57. (Tr. at 917.)

On September 24, 2012, Claimant presented to Amanda L. Barnett, BSN, RN, a staff nurse, with complaints of irregular sleep, nightmares, depression, and pain. (Tr. at 907-10.) Claimant reported that his energy was "not very good." (Tr. at 909.) Ms. Barnett observed that Claimant's mood and affect were congruent and that his mental status exam was unremarkable. (Tr. at 910.) She assessed suicidal ideation even though Claimant specifically denied such thoughts, depressive disorder NOS, anxiety, and insomnia. (Id.)

On March 14, 2012, Paula J. Brickham, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique on which she opined that Claimant did not have a severe mental

---

[3] A GAF of 41-50 indicates that the person has some serious symptoms "(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994)

impairment. (Tr. at 61-63.) She further opined that Claimant's mental impairments resulted in only mild difficulties in maintaining social functioning, but resulted in no restrictions in activities of daily living, concentration, persistence, or pace, or episodes of decompensation of extended duration. (Tr. at 63.)

### *Post-Decision Evidence*:

#### *Bruce A. Guberman, M.D.*:

On January 3, 2013, Dr. Guberman examined Claimant for complaints of low back pain, multiple other joint symptoms, hiatal hernia, diarrhea, and headaches, at the referral of Claimant's attorney. (Document No. 11, Exhibit 1 at 1.) Physical exam revealed a mildly antalgic, but steady gait; moderate tenderness in his cervical, thoracic, and lumbar spine; moderate tenderness and crepitations of the right shoulder and knees; mild tenderness of the elbows, wrists, and hands, with mild swelling of the wrists and right wrist; moderate tenderness of the right ankle, especially the plantar aspect and heel and mild tenderness of the left ankle; no evidence of muscle weakness; intact sensation; and an ability to walk on his toes and heels, an ability to walk heel to toe, and an ability to squat two thirds of the way with difficulty. (Id. at 4-7.) Dr. Guberman diagnosed degenerative joint disease (scoliosis, acute and chronic lumbosacral strain, acute and chronic cervical spine strain, history of tendinitis of the right elbow, and history of bilateral plantar fasciitis); history of hiatal hernia; symptomatic ventral hernia; diarrhea, cause undetermined with fecal urgency and incontinence; chronic headaches, which are probably tension in nature; history of rhabdomyolydid as a result of nonsteroidal anti-inflammatory medication; and history of bradycardia. (Id. at 7.) He opined that Claimant was "permanently and totally disabled for all types of employment" with an effective date of onset of when he last worked, April 14, 2010. (Id. at 8.)

Dr. Guberman also completed a form Medical Assessment of Ability to Do Work-Related Activities (Physical), on which he opined that Claimant was capable of lifting or carrying a maximum of twenty pounds occasionally and ten pounds frequently; walking two to three hours in an eight hour day for thirty minutes at a time; sitting for four hours total and for one hour without interruption; could never climb, balance, kneel, or crawl; and could occasionally stoop or crouch. (Id. at 10-11.) He further opined that Claimant's ability to reach, push, and pull was limited due to decreased range of motion in his shoulders and that he could not reach overhead or out. (Id. at 12.) Dr. Guberman also opined that Claimant should avoid heights, moving machinery, humidity, and vibration. (Id.) He noted that Claimant required immediate access to bathroom facilities. (Id.)

*Richard Reeser, M.A.*:

On January 14, 2013, Mr. Reeser, conducted a psychological evaluation at the request of Claimant's attorney. (Document No. 11, Exhibit 2 at 1-8.) On mental status exam, Mr. Reeser noted that Claimant was friendly and cooperative, his verbal content was marked by anger and sadness, his affect was appropriate and his mood was depressed and anxious, his thought processes were logically formed and the flow was normal, he reported content suggestive of possible visual hallucinations, he reported possible delusional content, he was oriented, his memory was good, and he had good insight and judgment. (Id. at 2.)

Mr. Reeser administered the Millon Clinical Multiaxial Inventory III (MCM III), which presented some validity concerns, was interpretable. (Id.) Claimant's response style suggested "a broad tendency to magnify the level of experienced illness or a characterological inclination to complain or to be self-pitying." (Id.) His response style also could have suggested a "current episode of acute turmoil." (Id.) The profile suggested the presence of a pervasive dysphoria and generalized

anxiety disorder. (Id.) Mr. Reeser also administered the Detailed Assessment of Posttraumatic Stress (DAPS), which indicated some invalidity because Claimant endorsed items rarely endorsed by traumatized individuals in the standard example. (Id. at 3.) The results suggested that Claimant either was presenting himself as especially symptomatic, randomly responding, or experiencing an unusual number of atypical symptoms. (Id.)

Mr. Reeser diagnosed PTSD; schizoaffective disorder; major depressive disorder, recurrent moderate; adjustment disorder; anxiety disorder NOS; depressive disorder NOS; and assessed a GAF of 55. (Id.) He opined that Claimant's difficulties significantly compromised his ability "to secure and sustain gainful employment," though he was competent to manage any funds that were awarded. (Id.)

Mr. Reeser also completed a form Medical Source Statement of Ability to Do Work-Related Activities (Mental), on which he opined that Claimant had extreme limitation in his ability to interact appropriately with the public; marked limitation in his ability to interact appropriately with supervisors and co-workers, respond appropriately to usual work situations and to changes in a routine work setting, make judgments on complex work-related decisions, and understand, remember, and carry out complex instructions. (Id. at 4-5.) Moderate limitations were assessed in Claimant's ability to make judgments on simple work-related decisions and respond appropriately to changes in a routine work setting and mild limitations in his ability to understand, remember, and carry out simple instructions. (Id.)

Analysis.

1. Credibility Analysis.

Claimant first alleges that the ALJ erred in assessing Claimant's credibility. (Document No.

20

11 at 7-10.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §§ 404.1529(a) and 416.929(a) (2012) If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Craig v. Chater, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). In Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (*citing* Craig v. Chater, 76 F.3d at 595), the Fourth Circuit stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2012). Additionally, the Regulations provide that:

[w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

> (i) Your daily activities;

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.

> (iii) Precipitating and aggravating factors;

> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the

individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

23

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 20.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 24.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 20-25.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 24.)

In assessing Claimant's pain and credibility, the ALJ provided a very detailed overview of Claimant's testimony and reports. (Tr. at 21-25.) He then analyzed Claimant's testimony and reports and contrasted it with the medical evidence. (Tr. at 20-25.) Regarding low back and joint pain, the ALJ noted that x-rays of the lumbar spine revealed only mild scoliosis and mild arthritis and multifocal spurring. (Tr. at 20, 245, 565.) The x-rays of the knees revealed only mild degenerative changes. (Tr. at 20, 248.) Likewise, x-rays of the right elbow showed some spurring and examination revealed some tenderness with minimal swelling and pain with intact hand sensation and only somewhat diminished wrist sensation. (Tr. at 20, 249.) Furthermore, Claimant reported that he walked around in the woods with his dog, maintained his father's cabin and property, and occasionally golfed, which undermined his reports of disabling pain. (Tr. at 24, 563.) Claimant's hearing loss was corrected with hearing aids as he did not report any problems with conversational hearing. (Tr. at 20, 468-69.)

Regarding his depression and anxiety, the ALJ noted that Claimant was treated with medications for anxiety and major depressive disorders and that he tested positive for PTSD. (Tr. at 20.) The ALJ considered Dr. Hudson's report that Claimant grossly over-reported symptoms and his

functional impairment, but that he had symptoms of mild anxiety and depression. (Tr. at 20, 566-78, 1036-49.) He also noted Claimant's hospitalizations for suicidal ideation in May and July, 2012, but that his mood improved and he was discharged. (Tr. at 20, 632-34, 634-35.)

Additionally, the ALJ noted Claimant's activities in assessing his credibility. (Tr. at 22-23.) Despite Claimant's alleged disability, the ALJ noted that Claimant work at the golf course beginning in June 2010, and worked there for two seasons, from spring to fall, in 2010 and 2011, and worked approximately 30 hours per week. (Tr. at 22, 34-35, 192.) Claimant reported that he worked the job so that he could obtain golf privileges, and therefore, he played golf during that time, too. (Id.) On January 6, 2012, Claimant reported that he rode the riding lawn mower, made the bed, loaded the dishwasher, and vacuumed the house. (Tr. at 195.) He indicated that he walked and drove a car, shopped for clothes and groceries once a month for twenty minutes, watched television, wrote, camped in his cabin, fished on a boat, and golfed. (Tr. at 196-97.) He testified that he could sit 30 minutes to one hour at a time, could lift a 40-pound bag of dog food, and managed his personal needs. (Tr. at 23.) He stated that he was unable to bend over to put on his pants, avoided crowds of people, and suffered severe fatigue. (Id.) He further testified that he did not use his hearing aids because they made a buzzing sound. (Id.) The ALJ considered the side effects of Claimant's medications, as well as the nature, precipitating and alleviating factors of his pain. (Tr. at 22-23.)

The ALJ also considered the two state agency opinions. (Tr. at 25.) Regarding Dr. Parishak's opinion, the ALJ concluded that Dr. Parishak's assessment was consistent with the evidence but that Claimant was more limited than assessed by Dr. Parishak and further limited Claimant to a sit/stand option at one hour intervals due to his reported knee arthritis. (Tr. at 25, 64-67.) Regarding Dr. Brickham's opinion, the ALJ acknowledged her opinion, but gave Claimant the benefit of the doubt and limited him to simple, routine work. (Tr. at 20, 25.) The ALJ noted that Claimant retained the

25

ability to concentrate if given normal breaks every two hours and was able to relate to supervisors and co-workers in a non-public work setting. (Id.)

In view of the foregoing, the undersigned finds that the ALJ conducted a thorough analysis of the relevant evidence, weighed the medical source opinions, and adequately explained his reasons for discounting the credibility of Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms.

Claimant also argues that under the mutually supportive test recognized in Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987), that he satisfies the requirements of 42 U.S.C. § 423(d)(5)(A), because the evidence of record, including his testimony and statements, is supported by substantial evidence. (Document No. 11 at 7-8.) Claimant has misinterpreted the holding in Coffman. In that case, the issue was not one of credibility but whether the ALJ applied the appropriate standard in weighing the treating physician's opinion that the claimant was disabled from gainful employment. Coffman, 829 F.2d at 517-18. The Fourth Circuit concluded that the ALJ had misstated the legal principles and standards and improperly discounted the physician's opinion due to a lack of corroborating evidence. Id. at 518. The Court held that the correct standard required a treating physician's opinion to be "ignored *only* if there is persuasive contradictory evidence." Id. There, the physician provided medical reports with his opinion letter. Id. The record also included findings of two other physicians and the testimony of the claimant. Id. In view of the of the supporting evidence, the Fourth Circuit noted that [b]ecause Coffman's complaints and his attending physician's findings were mutually supportive, they would satisfy even the more exacting standards of the Social Security Disability Benefits Reform act of 1984, 42 U.S.C. § 423(d)(5)(A)." Id. Accordingly, the undersigned finds contrary to Claimant's argument that Coffman fails to offer any "mutually supportive" test applicable to assessing a claimant's credibility. For the reasons set forth herein, the undersigned finds Coffman inapposite and

Claimant's argument without merit.

Claimant also argues that the ALJ's use of boilerplate credibility language warrants remand "because such language provides no basis to determine what weight the [ALJ] gave the Plaintiff's testimony." (Document No. 11 at 9.) Pursuant to SSR 96-7p, the ALJ "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." Id. The decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

In this case, it is clear that the ALJ used boilerplate language regarding the two-step credibility analysis. (Tr. at 20.) However, the ALJ went on to explain the specific reasons for his credibility determination and specifically cited the medical evidence, Claimant's testimony and reports, Claimant's activities, and the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Accordingly, pursuant to SSR 96-7p, the Court finds that the ALJ's credibility finding sufficiently was articulated and explained with references to the specific evidence that formed his decision. Thus, the Court finds that the ALJ's credibility decision is supported by substantial evidence of record.

2. ALJ's Duty to Develop the Record.

Next Claimant alleges that the ALJ failed in his duty to help him develop the record and placed an inordinate weight on the fact that neither a treating nor consulting examiner provided a functional assessment regarding his physical or mental abilities. (Document No. 11 at 10.) The Court finds Claimant's argument on this point unavailing. Although an ALJ does have a responsibility to help develop the evidence, it is Claimant's responsibility to prove to the Commissioner that he is

disabled.  20 C.F.R. § 404.1512(a) (2012).[4]  Thus, Claimant is responsible for providing medical

evidence to the Commissioner showing that he has functional limitations.  Id. § 404.1512(c).

Although the ALJ has a duty to develop the record fully and fairly, he is not required to act as

Claimant's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). It appears that Claimant

has been represented by counsel in this case throughout the proceedings. Although Claimant alleges

---

[4] In *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." *Id.*  The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. *Id.*

It is nevertheless Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a) (2012) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, the claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. *Id.* §§ 404.1512(c), 416.912(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." §§ 404.1512 (c); 416.912(c)(2012). In *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.  It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary. . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

*Bowen v. Yuckert*, 482 U.S. at 146, n. 5; 107 S.Ct. at 2294, n. 5 (1987). Thus, although the ALJ has a duty to develop the record fully and fairly, he is not required to act as the claimant's counsel. *Clark v. Shalala*, 28 F.3d 828, 830-31 (4th Cir. 1994). Claimant bears the burden of establishing a *prima facie* entitlement to benefits.  *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, Claimant "bears the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976).

28

a financial inability, he was able to secure functional assessments after the ALJ's decision. Nevertheless, the record was more than sufficient for the ALJ to have made a decision. See 20 C.F.R. § 404.1519a(b) (2012). Consequently, the ALJ was not required to order any further evaluations, and there is no indication that he placed any inordinate weight on the absence of any evaluations. Despite Claimant's allegations, the record contains the consultative mental evaluation by Ms. Elizabeth Bodkin, M.A., on February 28, 2012. (Tr. at 560-64.) Accordingly, the Court finds Claimant's argument without merit.

3. Additional Evidence.

Finally, Claimant alleges that the additional evidence from Dr. Guberman and Mr. Reeser, which was submitted to the Appeals Council, requires remand. (Document Nos. 11 at 11-12 and 13 at 1-3.) Pursuant to 28 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"[5] The Fourth Circuit has stated that "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins

---

[5] Sentence six of 42 U.S.C. § 405(g) provides:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

v. Secretary, Dep't of Health & Human Serv., 953 F.2d 93, 96 (4th Cir. 1991)(*en banc*). The new evidence must "relate to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). This does not mean that the evidence had to have existed during that period. Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985); Leviner v. Richardson, 443 F.2d 1338, 1343 (4th Cir. 1971).

The Court is not persuaded by Claimant's argument and finds that neither Dr. Guberman's nor Mr. Reeser's additional reports require that this matter be remanded. It is often true in cases of this nature, where benefits are awarded on a second application, that at least some of the evidence may be the same evidence considered by the ALJ. See Bradley v. Barnhart, 463 F.Supp.2d 577 (S.D. W.Va. 2006)(Copenhaver, D.J.); Reichard v. Barnhart, 285 F.Supp.2d 728 (S.D. W. Va. 2003) (VanDervort, M.J.). This Court has remanded several cases with somewhat similar factual scenarios. See, e.g. Reichard, 285 F.Supp.2d 728. The evidence may likely be a continuation of Claimant's medical evidence with regard to the same medical conditions. Citing Baker v. Commissioner of Soc. Sec., 520 Fed.App'x, 228, 229 (4th Cir. 2013), however, the Commissioner asserts that Claimant failed to meet his burden of proving that the additional evidence relating to the subsequent award of benefits is relevant to the matter at hand. (Document No. 14 at 1.) The Court agrees with the Commissioner. In Baker, the Fourth Circuit rejected Baker's claim that she was entitled to a sentence six remand based on a subsequent award of benefits. Baker, 520 Fed. App'x at 229. Rather, the Fourth Circuit held that "[a] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)."

(Quoting Allen v. Commissioner, 561 F.3d 646, 653 (6th Cir. 2009)). The Fourth Circuit found that Baker failed to meet her burden of showing that the evidence relied upon in reaching the favorable decision pertained to the period under consideration in the appeal. Id. Thus, Claimant must demonstrate that the opinions of Dr. Guberman and Mr. Reeser, which formed the basis of the favorable subsequent decision, are relevant to the period under consideration in the instant appeal.

Respecting Dr. Guberman's opinion, the Court notes that the physician's evaluation was conducted on January 3, 2013, after the ALJ's decision, was a one-time examination, and that his opinion is inconsistent with his rather benign examination findings. As the Commissioner points out, his opinion also is inconsistent with Claimant's admission that he could perform a medium exertion job at a golf course. (Tr. at 192.) His opinion also is inconsistent with the medical imaging evidence of record which indicated only mild findings. Respecting Mr. Reeser, the Court finds that his mental status findings are inconsistent with his opinion. He reported essentially normal findings on exam, yet opined that he was unable to work. Mr. Reeser even assessed a GAF of 55, indicative of only moderate symptoms. Furthermore, Mr. Reeser agreed with the evidence of record that Claimant possibly was exaggerating his symptoms of PTSD.

Accordingly, the Court finds that the opinions of Dr. Guberman and Mr. Reeser are inconsistent with the substantial evidence of record and therefore, neither are material nor warrant a remand for further consideration.

Claimant also alleges that remand is required to consider his newly submitted disability rating decision from the VA, which found him unemployable as of January 14, 2013, based on a seventy percent disability rating for anxiety and depressive disorder NOS and a ten percent disability rating for plantar fasciitis. (Document No. 13, Exhibit 4.) Claimant also alleges that the ALJ never

addressed in his decision the VA's initial disability rating decision. (Document No. 11 at 9.)

The Regulations define "evidence" to include "[d]ecisions by any governmental or nongovernmental agency about whether you are disabled or blind. 20 C.F.R. § 404.1512(b)(5) (2012). Although decisions of another agency are not binding, the Commissioner is required to evaluate all the evidence, including the decisions by any other agency. See 20 C.F.R. § 404.1504 (2012). Social Security Ruling 06-03p provides that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." 2006 WL 2329939, at *7. Furthermore, in considering such other decisions, the ALJ "should explain the consideration given to these decisions in the notice of decision." Id.; See also, DeLoatche v. Heckler, 715 F.2d 148, 150 n.1 (4th Cir. 1983) ("[T]he disability determination of a state agency is entitled to consideration by the Secretary.") Despite the parties' respective positions to the Fourth Circuit's decision in Bird v. Commissioner of Soc. Sec., 699 F.3d 337, 343 (4th Cir. 2012), the Court therein recognized the significance of acknowledging another agency's disability decision. The Fourth Circuit stated that "under the principles governing SSA disability determinations, another agency's disability determination 'cannot be ignored and must be considered.'" Id. (Quoting SSR No. 06-03p). The Court stated that "[t]he assignment of at least some weight to a VA disability determination reflects the fact that both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." Id.

Here, the ALJ referred throughout his decision to evidence from the Huntington and Lexington VA Medical Centers, where Claimant primarily received treatment for his impairments for a number of years. Nevertheless, there is no indication in the ALJ's decision that the ALJ

32

considered the VA's initial disability decision, and now the subsequent decision increasing the combined disability rating to eighty percent. The ALJ's decision lacks any explanation of his consideration given to the VA's decision, and therefore, remand is required for further consideration of the VA's disability decision.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motions for Judgment on the Pleadings (Document No. 11 and 13.) are **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, the final decision of the Commissioner is **REVERSED**,  and this matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings and is **DISMISSED** from the active docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2014.

R. Clarke VanDervort
United States Magistrate Judge

33